## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

**v.**                                                             **Case No:   6:14-cv-1539-Orl-22EJK**

**WALNER G. GACHETTE,**

      **Defendant.**
_____/

### REPORT AND RECOMMENDATION

This cause comes before the Court on: the undersigned's Order to Show Cause to Defendant, Walner G. Gachette (Doc. 109), issued April 8, 2020, wherein he was ordered to explain why he should not be held in contempt of Court for failure to fully satisfy the disgorgement award included in the Disgorgement Order; and Plaintiff's subsequent Motion for Contempt Sanctions Against Defendant Walner G. Gachette (the "Motion") (Doc. 120), filed May 27, 2020. Gachette, proceeding *pro* se, has responded to the Order to Show Cause (Docs. 110–112) and the Motion (Docs. 121–124.) Therefore, this matter is ripe for adjudication. For the reasons set forth below, I respectfully recommend that the Court find Gachette in civil contempt and issue sanctions, as set forth herein.

**I.   BACKGROUND**

The United States brought this action against Gachette in 2014, alleging that he and several companies he controlled engaged in a pattern of preparing fraudulent federal income tax returns. (Doc. 1.) Among other relief, the United States sought disgorgement of Gachette's illicit profits. (*Id.*) On April 8, 2016, the parties conditionally settled the case pending approval by the appropriate person in the office of the Attorney General of the United States. (Doc. 56.) The

settlement was finalized by letter dated August 16, 2016. (Doc. 64-2, "the Settlement.") Per the Settlement:

> The settlement terms provide for the entry of a judgment in favor of the United States in the amount of $5,000,000, which the United States will mark satisfied upon payment within three years of the date of this letter of $1,500,000, plus interest, if applicable . . . .
>
> . . .
>
> Any amounts due under the judgment which are not paid within one year of entry of the judgment will accrue interest at the rate set forth in 26 U.S.C. § 6621(a)(2) commencing one year after the date of the judgment. **If the $1,500,000 payment obligation, plus interest, if applicable, is not paid within three years from the date [of] this letter, the United States may take all available steps to enforce the judgment and collect $5,000,000, plus interest from the date of entry of the judgment, due to the United States.**

(*Id.*) (emphasis added).

On November 11, 2016, the parties stipulated to the entry of an order and judgment in this case (Doc. 62), which the Court entered (Doc. 63). The Order and Judgment of Permanent Injunction and Disgorgement Against Walner Gachette (the "Disgorgement Order") awarded the United States $5,000,000 to be disgorged from Gachette for unjust profits. (Doc. 63 at 5–6.) The Court specifically retained jurisdiction to enforce the Disgorgement Order. (*Id.* at 6.)

To date, Gachette has paid the United States a total of $953,657.21; however, he has made no payments since May 2, 2019. (Docs. 82-1, ¶ 2; 113-1 at 1.) Therefore, the United States moved for entry of an order to show cause why Gachette should not be held in contempt and sanctioned for failure to fully satisfy the disgorgement award included in the Disgorgement Order. (Doc. 81 at 1.) The undersigned granted that motion and entered the Order to Show Cause on April 8, 2020. (Doc. 109.) After receiving briefing from the parties (Docs. 110–113), the Court held a hearing on May 20, 2020. (Doc. 117.) At the hearing, the United States indicated it would file a motion for

sanctions, which is the instant Motion before the Court (Doc. 120.) Therein, the United States specifically identifies the sanctions it seeks against Gachette. Gachette filed several notices in response thereto. (Docs. 121–124.)

The present status of the case can be summarized as follows: Gachette contends that he should not be held in contempt and sanctioned because he has already paid over $900,000 to the United States. (Doc. 110.) He has also attempted to reach a new settlement with the United States without success. (*Id.*) Gachette wants to settle the debt against him, but failed to do so earlier because he was undergoing cancer treatment and was not in the mental state to attend to this case. (*Id.*) He states that he is willing to transfer four properties to the United States. (Doc. 111; Doc. 112 (listing addresses of four properties Gachette is willing to transfer to the United States).)

Gachette, however, continues to mistakenly assert that he should be responsible for repaying the United States only the negotiated total of $1,500,000, not the Disgorgement Order total of $5,000,000. (Doc. 111.) The undersigned has previously found that the deadline to pay the Settlement amount of $1,500,000 has passed, and thus, Gachette is responsible for paying the entire $5,000,000 (plus interest), which was set forth in the Disgorgement Order. (Doc. 109 at 4.) The United States responds that Gachette has not identified a substantive basis for why the Court should not hold him in contempt and sanction him. (Doc. 113.) Instead, the United States contends, Gachette has failed to obey a lawful order, and he has had the ability to comply with the Disgorgement Order more fully than he has to date. (*Id.* at 2.)

Consequently, the United States' instant Motion requests that the Court hold Gachette in contempt and enter a variety of sanctions against him, which are more fully addressed *infra*. Gachette responds to the Motion with a substantially similar argument as to why he should not be held in contempt, assuming that he is only liable for remainder of the $1,500,000 Settlement

amount. (Docs. 121–124). However, Gachette acknowledges that he has the assets to satisfy more of his debt to the United States than he has to date. (*Id.*)

While the Instant Motion was pending before the Court, on July 16, 2020, the United States instituted a separate civil action against Gachette, individually and as Trustee of the Walner G. Gachette Living Trust (the "Trust"), as well as A2ZRentals, LLC ("A2Z Rentals"), LBS Home Loan, Inc. ("LBS Home Loan"), Maria Gachette, and a number of interested parties. This is an action "to obtain a judgment against Walner Gachette for unpaid, assessed federal tax liabilities; [ ] to enforce federal tax liens against 24 residential real properties subject to the claims of the United States against Walner Gachette," and "to enforce a judgment of this Court against Walner Gachette in [the instant case], for the disgorgement of unjust profits by recourse to those properties." *See United States v. Gachette*, 6:20-cv-1267-ACC-EJK, Doc. 1, ¶ 1 (M.D. Fla. July 16, 2020). The United States has filed notices of lis pendens on each of the subject properties in that action. *Id.*, Docs. 2–25.

## II.   STANDARDS & DISCUSSION

### A. Civil Contempt

District courts have the inherent power to enforce compliance with their orders through civil contempt. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764–65 (1980). "A party seeking civil contempt bears the initial burden of proving by clear and convincing evidence that the alleged contemnor has violated an outstanding court order." *Commodity Futures Trading Comm'n v. Wellington Precious Metals, Inc.*, 950 F.2d 1525, 1529 (11th Cir. 1992) (per curiam). Clear and convincing evidence must demonstrate that: "1) the allegedly violated order was valid and lawful; 2) the order was *clear and unambiguous*; and 3) the alleged violator had the ability to comply with the order." *See Ga. Power Co. v. N.L.R.B.*, 484 F.3d 1288, 1291 (11th Cir. 2007). "Ambiguities

should be resolved in favor of the party charged with contempt." *United States v. Barnette*, 902 F. Supp. 1522, 1532 (M.D. Fla. 1995). Once a *prima facie* showing of a violation is made, the burden shifts to the alleged contemnor "to produce evidence explaining his noncompliance" at a show cause hearing. *Citronelle–Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1301 (11th Cir. 1991).

The United States contends that Gachette has made no further payments on the remaining amount due to the United States since May 2019; therefore, it sought an order to show cause why Gachette should not be held in contempt for his failure to pay the Disgorgement Order.[1] Gachette does not dispute that he failed to pay the full amount of the $1,500,000 due to the United States within three years of August 16, 2016, per the terms of the Settlement. (Doc. 97.) Accordingly, per the terms of the Settlement and the Disgorgement Order, the United States may take all steps available to enforce the judgment of $5,000,000, plus interest, contained in the Disgorgement Order, such as through civil contempt proceedings (Docs. 63, 64-2.)

The undersigned previously found that the United States had demonstrated by clear and convincing evidence that an order to show cause should issue as to Gachette for his failure to pay all or a portion of the remaining balance of the Disgorgement Order owed to the United States (which the United States contends is approximately $4,200,000). First, the Disgorgement Order entered in this case, per settlement agreement, by the presiding District Judge is valid and lawful. *See* 26 U.S.C. § 7402(a) ("The district courts of the United States at the instance of the United

---

[1] The Court directed the United States to explain in supplemental briefing why the Disgorgement Order against Gachette should be enforced through the Court's inherent contempt power rather than by the legal process of execution. (Doc. 102.) The United States's briefing persuaded the Court that it has the authority to enforce the Disgorgement Order through its contempt powers because of the nature of this action as an internal revenue enforcement action to recover unjust profits. (Doc. 105.)

States shall have such jurisdiction to . . . render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws."); *United States v. Stinson*, 729 F. App'x 891, 898–99 (11th Cir. 2018) (upholding entry of disgorgement order in fraudulent tax preparation case under § 7402).

Second, the Disgorgement Order clearly and unambiguously requires Gachette to surrender to the United States the sum of $5,000,000 (plus interest, according to the Settlement). The parties agreed separately that Gachette would be allowed to satisfy the amount owed in a reduced amount of $1,500,000 if it were paid in full by August 16, 2019. However, that date has passed and Gachette has paid only approximately $950,000 to the United States. The full amount of $5,000,000 is now due, as the separate payment plan established by the Settlement has expired.

Finally, the United States has submitted evidence that demonstrates that Gachette has the ability to pay at least a substantial portion of the Disgorgement Order. (Doc. 81 at 4–5; Docs. 81-5, 81-6, 81-7.) The United States points to a number of properties that Gachette directly or indirectly owns, which could be liquidated to pay at least a portion of the judgment owed. (*Id.*).

Moreover, Gachette has contested neither the validity of the Disgorgement Order nor that he has the ability to pay to the United States more than he has to date. Rather, Gachette continues to assert that he owes only the remining balance on the $1,500,000 Settlement amount. However, as previously stated, the plain language of the Settlement required Gachette to satisfy this balance *in full* by August 16, 2019, which Gachette acknowledges he did not do. Gachette also informed the Court that he was previously undergoing cancer treatment, and this contributed to his inability to pay the debt. However, Gachette has acknowledged that he is now able to make payments to the United States, yet he still has not done so. Because Gachette has failed to come forward with sufficient evidence explaining his current noncompliance with the Disgorgement Order, the

undersigned recommends the Court find that he is in civil contempt.

### B. Sanctions

This Court has wide discretion in fashioning an appropriate remedy for Gachette's civil contempt. *United States v. City of Miami*, 195 F.3d 1292, 1298 (11th Cir. 1999). "These sanctions may serve one of two broad purposes: (1) coercing the contemnor to comply with a court order, or (2) compensating a party for losses suffered as a result of the contemptuous act." *Id.*

"A coercive contempt sanction comes with some limitations; for instance, once a contemnor's contumacious conduct has ceased or the contempt has been purged, no further sanctions are permissible." *F.T.C. v. Leshin*, 719 F.3d 1227, 1231 (11th Cir. 2013) (*Leshin II*). On the other hand, the Eleventh Circuit has stressed that "the district court's discretion in imposing non-coercive sanctions is particularly broad and only limited by the requirement that they be compensatory." *Id.* (quoting *Howard Johnson Co. v. Khimani,* 892 F.2d 1512, 1521 (11th Cir. 1990)).

Ability to pay is a complete defense in the context of a coercive sanction. *Id.* at 1234. In contrast, "[f]or a compensatory contempt sanction, . . . inability to pay is no defense." *Id.* Thus, "[a] contemnor need only be afforded the opportunity to purge his sanction of a fine, in the civil context, where a fine is *not compensatory*." *FTC v. Leshin*, 618 F.3d 1221, 1239 (11th Cir. 2010) (*Leshin I*) (emphasis added). Ultimately then, where compensatory civil contempt sanctions are entered, in order to purge the contempt, "the contempt ends when the contemnor pays the full amount" of the damages caused by their violation of the Court's decree. *Leshin II*, 719 F.3d at 1234.

And as the Eleventh Circuit has explained, "a disgorgement order 'establishes a personal liability, which the defendant must satisfy regardless whether he retains the . . . proceeds of his

wrongdoing.'" *Id.* (quoting *SEC v. Banner Find Int'l*, 211 F.3d 602, 617 (D.C. Cir. 2000)). Put more simply, the defendant's "obligation to pay [is] not [ ] extinguished by his inability to do so" where a disgorgement award remains outstanding. *Id.* at 1235.

The United States requests the Court enter the following compensatory sanctions against Gachette:

- Order Gachette not to transfer title to any residential rental properties currently titled to himself, A2Z Rentals, LBS Home Loan, or the Trust, unless in an arm's length transaction for adequate consideration, and not to encumber any of these properties with mortgages or other liens;
- Order Gachette, in the event any real estate of his, A2Z Rentals, LBS Home Loan, or the Trust is sold, to immediately provide an accounting of the sale proceeds to counsel for the United States, and to deposit the net sale proceeds into the registry of the Court;
- Order Gachette to produce to counsel for the United States a monthly accounting of all rent receipts, no later than the last day of every month, and continuing until further notice; and
- Order Gachette to pay the United States $5,000 each month.

(Doc. 120 at 1.)

### 1. Sanctions regarding restrictions on property transfers, net proceeds and monthly accounting

Gachette testified at the Show Cause hearing that his current business is in buying, renovating, renting, and selling residential properties. Gachette controls a total of 32 residential real estate properties and owns legal title to two residential properties. (Doc. 116-5.) His Trust, of which Gachette has full control, owns three properties. (Docs. 116-3; 120-1, § 1.04.) Gachette, by his own admission, also controls A2Z Rentals and LBS Home Loan, through which he owns another 27 properties. (Doc. 116-7, 57:20–58:3.) Specifically, A2Z Rentals holds legal title to 11 properties, (Doc. 116-1), and LBS Home Loan holds legal title to 16 properties, only 2 of which are encumbered by a mortgage. (Docs. 116-2; 116-7, 57:20–58:3.) Gachette also receives over $20,000 in rental income from these properties each month. (Docs. 116-6; 116-7, 85:16–25.)

Gachette has not liquidated any of these assets to pay the judgment in the Disgorgement Order and has continued to operate his residential rental business. For example, Gachette, through A2Z Rentals, sold one property on or around April 30, 2020, and the United States does not know what Gachette did with the proceeds of that sale. (Doc. 120-3.) Therefore, the United States asserts that its proposed sanctions are necessary to coerce Gachette into compliance with the Disgorgement Order. The undersigned concludes such sanctions are appropriate, particularly given that Gachette has not contested his control over these entities or these properties. Therefore, the undersigned recommends the Court enter the United States' requested sanctions against Gachette regarding restrictions on property transfers, paying net proceeds of any sales, and providing a monthly accounting to the United States.

### 2. Sanctions regarding a monthly payment of $5,000

The United States also requests that the Court order Gachette to make monthly payments on the Disgorgement Order in the amount of $5,000. (Doc. 120 at 9.) The United States points to several examples of Gachette's high standard of living, including driving several luxury vehicles, traveling frequently internationally, purchasing designer bags and shoes, and receiving monthly spa treatments. (*Id.* at 9–10.)

As previously noted, Gachette receives more than $20,000 per month in rental income. Some estimates have been as high as $28,000. (Doc. 116-6.) Gachette has testified that his profit is 30 to 40% of this income (Doc. 116-7, 86:21–87:15), which the Court somewhat conservatively estimates to be approximately $8,000 per month. The Government acknowledges that it is difficult to verify the exact amount of Gachette's monthly profits due to Gachette's lack of record keeping for his businesses. (Doc. 120 at 10.) The United States also asserts that Gachette earns an unidentified amount of money as a licensed real estate broker, through A2Z Realty Group, but it

has not provided the Court with an estimated income from this source. (Doc. 120 at 11.)

While Gachette claims he cannot afford the $5,000 monthly payment the United States seeks, he has provided no evidence to the Court, other than his own testimony, which demonstrates otherwise. (Docs. 121–124.) He states that many of these properties are rented to low income families who do not always pay their rent on time; thus, he is unable to commit to a set monthly payment to the United States in the amount of, for example, $5,000.

Assuming Gachette grosses approximately $8,000 per month, Gachette submits monthly expenses in the amount of $4,852, which the United States does not contest. (Doc. 120 at 11.) However, the United States challenges Gachette's additional claimed monthly expenses in the amounts of $700 in credit card charges, $7,500 in vehicle ownership costs, and $1,500 in vehicle operating costs. The United States argues that these expenses should not be allowed as claimed.

As to the credit card expenses, the United States posits that the Court should not allow these for several reasons. First, they include Gachette's business expenses, which already have been, at least partially, considered in determining Gachette's net income from his rental property business. (Doc. 120 at 12.) To the extent they represent personal expenses, the United States has not otherwise objected to his monthly expenses. (*Id.*) Finally, Gachette has not provided any documentation of ongoing credit card expenses. (*Id.*)

The United States next contends that the vehicle ownership costs of $7,500 and operating costs of $1,500 are excessive. (*Id.*) The Internal Revenue Service's financial standards for determining what delinquent taxpayers can afford to pay toward back taxes amount to $1,042 for two automobiles (one for him and one for his wife), and $426 per month for operating expenses. (*Id.*) In other words, Gachette should, at most, claim $1,468 per month for total vehicle expenses. (*Id.*)

However, if the Court were to disallow entirely the credit card expenses and allow for a nearly $1,500 monthly vehicle expense, this still would not result in a remainder of $5,000 each month that Gachette could pay to the United States, given his other monthly expenses. Therefore, I do not find a monthly payment of $5,000 to the United States to be an appropriate sanction at this time, given the evidence presented to the Court, and I recommend that the Court decline to assess this sanction.

### III.     RECOMMEDATION

Upon consideration of the foregoing, I **RESPECTFULLY RECOMMEND** that the Court **GRANT IN PART** Plaintiff's Motion for Contempt Sanctions Against Defendant Walner G. Gachette (Doc. 120), **FIND** that Gachette is in civil contempt of Court for failure to make further payments on the Disgorgement Order, and **SANCTION** Gachette pursuant to the Court's Order to Show Cause (Doc. 109) as follows:

1. Order Gachette not to transfer title to any residential rental properties currently titled to himself, A2Z Rentals, LBS Home Loan, or the Trust, unless in an arm's length transaction for adequate consideration, and not to encumber any of these properties with mortgages or other liens;

2. Order Gachette, in the event that any real estate of his, A2Z Rentals, LBS Home Loan, or the Trust is sold, to immediately provide an accounting of the sale proceeds to counsel for the United States, and to deposit the net sale proceeds into the registry of the Court; and

3. Order Gachette to produce to counsel for the United States a monthly accounting of all rent receipts, no later than the last day of every month, and continuing until further notice.

## NOTICE TO PARTIES

A party has **fourteen days** from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on October 21, 2020.

EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Parties